IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,044

STATE OF KANSAS,
*Appellant*,

v.

DANIEL P. PARKER,
*Appellant*.

SYLLABUS BY THE COURT

1.

A misstatement of the law during a prosecutor's closing argument can deny a defendant a fair trial when the facts are such that the jury could have been confused or misled by the statement.

2.

It is improper to instruct or tell a jury that it must unanimously agree to acquit the defendant of the charged offense before it can consider lesser included offenses.

3.

It is proper to instruct or tell jurors to consider a defendant's guilt for lesser included offenses only if they "do not agree" or if they "do not find" the defendant is guilty of the charged offense. Such phrases do not require the jurors to unanimously acquit the defendant of the greater charge before considering a lesser charge.

4.

A prosecutor's comment directing the jurors to consider the defendant's guilt for lesser included offenses only if they first find the defendant *not guilty* of the charged

1

offense is an incorrect statement of the law because a guilty or not guilty verdict requires unanimous agreement amongst the jurors. Such a statement is distinguishable from telling a jury to move on to consideration of lesser included offenses only if they *do not agree* or if they *do not find* the defendant guilty of the charged offense because these statements presuppose a less than unanimous conclusion amongst the jurors.

Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed March 6, 2015. The judgment of the district court is affirmed.

*Peter Maharry*, of the Kansas Appellate Defender Office, argued the cause, and *Lydia Krebs*, of the same office, was on the brief for appellant.

*Barry K. Disney*, assistant county attorney, argued the cause, and *Barry Wilke*rson, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.:  The State charged Daniel P. Parker with felony murder and criminal discharge of a firearm at an occupied building. Parker's case proceeded to trial where the jury, in addition to receiving instructions on the charged crimes, received instructions on second-degree unintentional murder and involuntary manslaughter as lesser included offenses of felony murder. The jury ultimately found Parker guilty of felony murder and criminal discharge of a firearm.

Now on appeal, Parker argues that the prosecutor committed reversible misconduct during closing arguments when he told the jurors that they were to consider Parker's guilt for the lesser included crimes only if they first found him not guilty of felony murder. Based on our prior decisions, we conclude that this statement was erroneous because it suggested to the jurors that they had to reach a unanimous decision

2

(*i.e.*, finding Parker not guilty of felony murder) before they could even consider Parker's guilt for the lesser included crimes. But, due to the prosecutor also reciting the correct legal standard during closing arguments and the overwhelming evidence establishing Parker's guilt for felony murder, we conclude that the prosecutor's erroneous statement does not constitute reversible misconduct. Accordingly, we affirm Parker's convictions and sentence.

FACTS

Shortly after midnight on January 1, 2012, Parker had a verbal confrontation at a Manhattan bar with members of the Assassin Street Rydaz Motorcycle Club (MC). After the altercation, Parker left the bar with his wife and drove to their apartment in Junction City. Parker eventually left the apartment and drove to the MC's clubhouse in Manhattan where the MC was having a party. While sitting in his car, Parker fired between 20 and 27 rounds at the clubhouse with his AR-15 rifle. One of the rounds struck and killed Frederick Beverly, who was standing outside the clubhouse at the time of the shooting. Forensic evidence indicated that the bullet that struck Beverly may have ricocheted off an object before striking Beverly in the forehead.

Ultimately, the State charged Parker with one count of felony murder (based on the underlying felony of criminal discharge of a firearm at an occupied building) and one count of criminal discharge of a firearm at an occupied building.

In an interview prior to trial, Parker admitted to shooting at the clubhouse but denied that he intended to shoot anyone. At trial, Parker testified that he drove to the clubhouse and fired his rifle "in the direction near that building" but maintained that he was not "aiming" his gun when he fired it.

3

The district court, in addition to instructing on the charged crimes, instructed the jury on second-degree unintentional murder and involuntary manslaughter as lesser included offenses of felony murder. Consistent with PIK Crim. 4th 68.080 (lesser included offenses), the district court instructed the jury that it could find Parker "guilty of murder in the first degree, murder in the second degree, involuntary manslaughter, or not guilty" and that "[w]hen there is a reasonable doubt about which of two or more offenses Defendant is guilty, he may be convicted of the lesser offense only." Additionally, the district court instructed the jury at the beginning of the elements instruction on second-degree unintentional murder that "[i]f you do not agree that the Defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree." PIK Crim. 4th 54.140 (murder in the second degree). Similarly, as a preface to the elements instruction on involuntary manslaughter, the district court instructed the jury that "[i]f you do not agree that the defendant is guilty of second-degree murder, you should then consider the charge of involuntary manslaughter." Finally, the district court instructed the jurors that their "verdicts in this case must be unanimous." See PIK Crim. 4th 68.010.

During closing arguments, the prosecutor commented on how the jury was to consider Parker's guilt in relation to the lesser included offenses:

"One of the things that you heard is that you have [been] given lesser [includeds] in this case. The defendant is charged by the State with First-Degree Murder. A lesser included of that is second-degree murder, and a lesser included of second-degree murder is involuntary. It is very important though that you follow the instructions on how you are supposed to look at these. A lot of people think that a lesser included—that you just go back in the jury room and decide which one of these three crimes he's guilty of. Well the truth—the fact of the matter is that the State would submit that he is guilty of all of these crimes because they are lesser included. So if he is guilty of the first-degree murder, he's—because it's included also that he is guilty of involuntary and also guilty of second-

4

degree. But here's the instruction that you need to make sure that you follow. Judge Stutzman has given you this instruction and it says, if you do not agree that the Defendant is guilty of murder in the first degree, then you should consider the lesser included offense of second-degree murder, and then of involuntary manslaughter. *The point being that you only look at second degree and you only look at involuntary manslaughter if you have found the defendant not guilty of first-degree murder.* So you start with first-degree murder and if he's guilty of first-degree murder then stop. You don't have to—you should not look at the lessers. Because if you find him guilty of first-degree murder, he's going to be guilty of the lessers. So you look at the first-degree murder, by the instruction of the Judge, and only if you do not agree that he is guilty of first-degree murder that you go on to the lessers." (Emphasis added.)

During defense counsel's closing argument, he argued that the jury should return a "just" verdict which, in counsel's opinion, would be finding Parker guilty of second-degree unintentional murder. Defense counsel stated:

"You can hold [Parker] accountable by your verdict. And you can show him that we listened to your case young man, and we thought about it, and we listened to everything, and we kept kicking around that word just, justice, and we thought about it some more. We tried to hammer out what was a just verdict. There's a count that exactly fits, even the language. Unintentionally. This clearly was. But recklessly. God was it. Under circumstances that show extreme indifference to the value of human life. Indeed. That is exactly this crime. Returning a verdict of murder in the second degree I submit to you is fair to everybody. It's a conviction for murder. The definition fits this. It shows Daniel Parker that again we heard you and in recognition of all that we heard, all of it, in consideration of everything, we find you guilty of murder in the second degree."

During the State's rebuttal argument, the prosecutor addressed defense counsel's just-verdict argument:

"Your verdict has to be based on the law plus credible facts. You don't—it's not a smorgasbord where you just simply pick the one that is easy and fair to everybody. You

5

pick the one that the law and the evidence direct you to. And yes, I would say that he is guilty of second-degree murder, he is also guilty of involuntary. Those all fit because they are lesser included. It's like, as an illustration, a lasagna has pasta and cheese in it and it is like saying if you eat lasagna that you are going to eat cheese and pasta. And if he is guilty of the first-degree murder, he is guilty of everything under it. So it doesn't help you to say find him guilty of second-degree murder because that's ignoring the law. *You know you have to recall that the Judge says that you only get to second degree murder, you only look at the lesser if you find him not guilty of murder in the first degree.*" (Emphasis added.)

The jury ultimately found Parker guilty of felony murder and criminal discharge of a firearm at an occupied building. The district court sentenced Parker to a hard 20 life sentence for the felony-murder conviction and a concurrent 59-month prison sentence for the criminal discharge of a firearm conviction. Parker filed a timely notice of appeal.

PROSECUTORIAL MISCONDUCT

Parker argues that when the prosecutor told the jury during closing argument that it was to consider the lesser included offenses only after finding him "not guilty of first-degree murder," the prosecutor misstated the law—thus, committing misconduct—by conveying to the jury that it must unanimously acquit him of felony murder before considering his guilt for any lesser included offenses.

*Standard of Review*

Appellate review of a prosecutorial misconduct claim based on improper comments requires a two-step analysis. First, an appellate court decides whether the comments at issue were outside the wide latitude a prosecutor is allowed when discussing evidence. If so, there was misconduct. Second, if misconduct is found, an appellate court determines whether the improper comments prejudiced the jury against the defendant and

6

denied the defendant a fair trial. *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013).

A.      *Were the Statements Improper?*

Prosecutors enjoy wide latitude in crafting closing arguments. *State v. Scott*, 271 Kan. 103, 114, 21 P.3d 516 (2001). "A misstatement of the law during a prosecutor's closing argument can deny a defendant a fair trial when '"the facts are such that the jury could have been confused or misled by the statement."' *State v. Williams*, 299 Kan. 509, 544, 324 P.3d 1078 (2014) (quoting *State v. Phillips*, 295 Kan. 929, Syl. ¶ 5, 287 P.3d 245 (2012)."

With regard to lesser included offenses, K.S.A. 2013 Supp. 22-3414(3) states:  "In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 2013 Supp. 21-5108(b) states:  "When there is a reasonable doubt as to which of two or more degrees of a crime the defendant is guilty, the defendant shall be convicted of the lowest degree only."

In *State v. Trujillo*, 225 Kan. 320, 324, 590 P.2d 1027 (1979), the defendant complained that the district court, though instructing the jury on several lesser offenses of the charged offense, erred by not sequencing them in descending order of severity or providing guidance to the jury on "which lesser offense was the more serious." The *Trujillo* court stated that in the interests of promoting an orderly method of considering the possible verdicts, "a trial court should instruct on lesser included offenses in the order of severity beginning with the offense with the most severe penalty." 225 Kan. at 324.

7

The pattern instructions reflect *Trujillo*'s command. In addition to organizing lesser included offenses by descending severity level, the pattern instructions recommend placing a transitional statement at the beginning of the elements instruction for each lesser offense. For example, when the facts warrant giving an instruction on second-degree murder as a lesser included offense of first-degree murder, the pattern instructions recommend placing the following statement at the beginning of the elements instruction on second-degree murder:  "If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree." PIK Crim. 4th 54.140. Consistent with the pattern instructions, the district court placed this language at the beginning of the elements instruction for second-degree murder. Similarly, the district court prefaced the elements instruction for involuntary manslaughter by instructing the jury that if it did "not agree that the defendant is guilty of second-degree murder, you should then consider the charge of involuntary manslaughter."

In *State v. Korbel*, 231 Kan. 657, 661, 647 P.2d 1301 (1982), the defendant claimed that the instructional language "if you cannot agree that the defendant is guilty" coerced the jury into returning a verdict of guilty on the more severe charge. The court rejected this argument, stating:

> "The words 'if you cannot agree' when used to preface an instruction on a lesser charge are not coercive and do not require the members of a jury to unanimously find the accused innocent of the greater charge before proceeding to consider a lesser charge. The words 'if you cannot agree' presuppose less than a unanimous decision and no inference arises that an acquittal of the greater charge is required before considering the lesser."
> 231 Kan. at 661.

See also *State v. Roberson*, 272 Kan. 1143, 1153-55, 38 P.3d 715, *cert. denied* 537 U.S. 829 (2002), *overruled on other grounds State v. Gunby*, 282 Kan. 39, 144 P.3d 647

8

(2006) (relying on *Korbel* to reject challenge to "if you do not agree" language prefacing lesser offense element instructions; language did not require jury to reach unanimous decision acquitting defendant of greater charge before considering lesser charges).

Notably, in *State v. Carter*, 284 Kan. 312, 331-32, 160 P.3d 457 (2007), this court, relying on *Roberson*, *Korbel*, and other cases, found that instructions directing jurors to move on to consideration of lesser included offenses only if they "do not agree" or if they "do not find defendant guilty" were not coercive and correctly stated the law.

Based on *Korbel* and the statutory mandate requiring that a defendant be convicted of a lesser crime "[w]hen there is a reasonable doubt as to which of two or more degrees of a crime the defendant is guilty," see K.S.A. 2013 Supp. 21-5108(b), this court in *State v. Hurt*, 278 Kan. 676, 682, 101 P.3d 1249 (2004), held that a prosecutor would be misstating the law if he or she argued to jurors that all 12 of them had to agree that there was reasonable doubt concerning the crime charged before they could even consider the defendant's guilt for a lesser included offense. See also *State v. Jones*, 298 Kan. 324, 339, 311 P.3d 1125 (2013) (prosecutor misstated the law when she told jurors: "'[B]efore you get all the way to this lesser excuse kind of homicide, voluntary manslaughter, . . . you have to all agree that there's no premeditation'"; statement conveyed to "jurors that each had to reject premeditation before a lesser included offense could be considered").

The above statutes and caselaw show that it is improper to instruct or tell a jury that it must unanimously acquit the defendant of the charged offense before it can consider lesser included offenses. But, as this court's decision in *Carter* shows, directing jurors to move on to consideration of lesser included offenses only if they do not agree or if they do not find the defendant guilty of the charged offense is not coercive and correctly states the law. See *Carter*, 284 Kan. 312, Syl. ¶ 14. The reason for this, as explained in *Korbel*, is because the phrases do not require the jurors to unanimously

9

acquit the defendant of the greater charge before considering a lesser charge. *Korbel*, 231 Kan. at 661.

Based on the above analysis, the prosecutor's comments directing the jurors to consider Parker's guilt for the lesser included offenses only if they first found him *not guilty* of felony murder were incorrect statements of the law because a guilty or not guilty verdict requires unanimous agreement amongst the jurors. See K.S.A. 22-3421; *State v. Cheek*, 262 Kan. 91, 108, 936 P.2d 749 (1997) ("The authority for [instructing jurors that their agreement upon a verdict must be unanimous] is based on the fundamental right of any accused to a trial by jury, §§ 5 and 10 of the Kansas Constitution Bill of Rights, and K.S.A. 22-3403, together with our statute requiring a unanimous verdict under K.S.A. 22-3421."). Such a statement is distinguishable from telling a jury to move on to consideration of lesser included offenses only if they *do not agree* or if they *do not find* the defendant guilty of the charged offense because these statements presuppose a less than unanimous conclusion amongst the jurors. Accordingly, the prosecutor's statements were outside the wide latitude given to prosecutors in crafting closing arguments and, thus, constitute misconduct.

### B. Did the Prosecutor Commit Reversible Misconduct?

Because we have concluded that the prosecutor's statements were erroneous, we now determine whether the comments constitute reversible misconduct. This involves a three-factor inquiry: (1) whether the misconduct was gross and flagrant; (2) whether it was motivated by prosecutorial ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. No one factor is controlling. *State v. Crawford*, 300 Kan. 740, Syl. ¶ 3, 334 P.3d 311 (2014); *Bridges*, 297 Kan. at 1012; *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004). Before the third factor can ever override the first two factors, an appellate

court must be able to say that the State can meet both the statutory harmlessness standard stated in K.S.A. 60-261 and the constitutional standard stated in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). *Crawford*, 300 Kan. at 740, Syl. ¶ 4; *Bridges*, 297 Kan. at 1012-13 (citing *Tosh*, 278 Kan. at 97).

This court has noted that, as a practical matter, the result of the harmless error evaluation depends on the outcome of the *Chapman* constitutional standard. "[B]oth the constitutional and nonconstitutional error clearly arise from the very same acts and omissions," and the constitutional standard is more rigorous. *Bridges*, 297 Kan. at 1015. Thus, the State necessarily meets the lower statutory standard under K.S.A. 60-261 if it meets the higher constitutional standard.

With regard to the first factor—whether the misconduct was gross and flagrant—this court considers whether the misconduct was repeated, was emphasized, violated a long-standing rule, violated a clear and unequivocal rule, or violated a rule designed to protect a constitutional right. *State v. Marshall*, 294 Kan. 850, Syl. ¶ 6, 281 P.3d 1112 (2012). In analyzing whether a prosecutor's misconduct was motivated by ill will, the court considers whether "the misconduct was deliberate, repeated, or in apparent indifference to a court's ruling." 294 Kan. 850, Syl. ¶ 7.

Though the prosecutor made two incorrect statements of law regarding how the jury was to consider Parker's guilt for the lesser included crimes, the prosecutor also correctly told the jurors if they did not agree Parker was guilty of felony murder, then they should consider whether Parker was guilty of the lesser included offenses. See *Korbel*, 231 Kan. at 661 ("The words 'if you cannot agree' when used to preface an instruction on a lesser charge are not coercive and do not require the members of a jury to unanimously find the accused innocent of the greater charge before proceeding to consider a lesser charge."). "Where a prosecutor makes both a misstatement of the law

11

and a correct recitation of the applicable law in a closing argument, we have been loath[] to characterize the misstatement as being gross and flagrant misconduct. [Citations omitted.] Neither does such a situation support a finding of ill will." *State v. Naputi*, 293 Kan. 55, 62, 260 P.3d 86 (2011). Similarly, we do not characterize the prosecutor's comments here as either gross and flagrant or the product of ill will. See *Jones*, 298 Kan. at 339-40 (court refused to find that prosecutor's incorrect statement regarding jury's consideration of lesser included offenses was gross and flagrant or motivated by ill will because, prior to making improper comment, prosecutor correctly told jury: "[I]f you cannot agree [on the existence of premeditation], only then do you go to second and determine whether or not the State has proven second-degree murder").

Finally, the third factor: Was the evidence of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors? In answering this question, the State, as the party "benefit[ting] from the prosecutorial misconduct, bears the burden to establish beyond a reasonable doubt that the error did not affect the defendant's substantial rights, *i.e.*, there is no reasonable possibility the error affected the verdict." *State v. Inkelaar*, 293 Kan. 414, 431, 264 P.3d 81 (2011); see, *e.g.*, *State v. Raskie*, 293 Kan. 906, 918, 269 P.3d 1268 (2012) (finding prosecutor's misstatement did not affect the outcome of the trial in light of the entire record).

The evidence presented at trial showed that Parker committed a criminal discharge of a firearm at an occupied building by "recklessly and without authority" firing his AR-15 rifle multiple times at the MC's clubhouse while numerous people were inside. See K.S.A. 2013 Supp. 21-6308(a)(1)(A). Because Beverly was killed during the commission of this inherently dangerous felony, the evidence clearly established that Parker was guilty of felony murder. See K.S.A. 2013 Supp. 21-5402(a)(2) and (c)(1)(O). Accordingly, we conclude that there is no reasonable possibility that the prosecutor's comments affected the verdict.

12

In passing, we note another reason for finding harmless the comments at issue here: Prior to Parker's trial in August 2013, the legislature amended the first-degree murder statute to state that there are no lesser included offenses of felony murder and that this change applies retroactively to all pending cases. See K.S.A. 2013 Supp. 21-5402(d) and (e). In *State v. Todd*, 299 Kan. 263, Syl. ¶ 4, 323 P.3d 829 (2014), this court held that the 2013 amendment did not violate the Ex Post Facto Clause and, thus, could be properly applied to all cases not yet final. Since *Todd*, this court on numerous occasions has summarily rejected a defendant's contention that the district court erred by not giving instructions on lesser included offenses of felony murder. See *e.g.*, *State v. Clay*, 300 Kan. 401, 409, 329 P.3d 484 (2014) ("Based on *Todd*, we conclude Clay was not legally entitled to either an unintentional second-degree murder instruction or an involuntary manslaughter instruction as a lesser included offense of felony murder.").

Based on K.S.A. 2013 Supp. 21-5402(d) and (e), the district court in this case should not have instructed on second-degree unintentional murder or involuntary manslaughter as lesser included offenses of felony murder because felony murder no longer has lesser included offenses. Thus, the instructions were not legally appropriate. Because Parker was not legally entitled to any instructions on lesser included offenses of felony murder, he could not have been prejudiced by the prosecutor's comments regarding how the jury was to consider his guilt for the lesser included crimes.

Though we conclude that the prosecutor committed misconduct, the misconduct did not prejudice the jury against Parker and deny him a fair trial. Thus, we affirm Parker's convictions and sentence.

13