(213 P.3d 745)
No. 100,571

STATE OF KANSAS, *Appellee*, v. BRADLEY D. HARDESTY,
*Appellant*.

Opinion filed
August 14, 2009.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Don L. Scott*, county attorney, and *Steve Six*, attorney general, for appellee.

Before McAnany, P.J., Elliott and Caplinger, JJ.

Caplinger, J.: Bradley Hardesty appeals his jury conviction of identity theft in violation of K.S.A. 21-4018(d)(3). The identity theft charge resulted after Hardesty was pulled over for suspected driving under the influence (DUI) and produced his deceased brother's driver's license. Hardesty first challenges the sufficiency of the evidence of identity theft, arguing K.S.A. 21-4018 applies only when the defendant possesses another person's identification documents. Hardesty reasons that his deceased brother was not a "person," and therefore the evidence was insufficient to support the identity theft charge. We disagree and find the legislature intended to include the theft of the identity of a deceased person within the scope of K.S.A. 21-4018(a), as long as the remaining requirements of the statute are satisfied.

Hardesty also challenges his DUI conviction, arguing the district court erred in admitting testimony regarding his refusal to take a preliminary breath test (PBT). Because the charge of refusal to take a PBT was decided by the court and not the jury, we conclude the district court erred in permitting the jury to consider Hardesty's refusal in connection with the DUI charge. Nevertheless, because the evidence of Hardesty's guilt of the DUI charge was overwhelming, the error was harmless.

Finally, Hardesty challenges the district court's imposition of an aggravated presumptive sentence of incarceration, alleging violations of his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We dismiss this challenge, in part, and affirm his sentence.

### Factual and procedural background

The State charged Hardesty with driving under the influence of alcohol or drugs; identity theft; obstructing official duty; driving with a suspended license; transporting an open container; driving after being declared a habitual violator; refusing to take a preliminary breath test; and making an improper turn. Subsequently, the State dismissed the charge of driving with a suspended license.

Prior to trial, the district court determined that the court, rather than the jury, would decide Hardesty's guilt with respect to the charge of refusal to take a PBT. In response, Hardesty moved to exclude from the jury any testimony regarding his refusal to take a PBT. The district court denied his motion, finding the evidence was admissible to prove the charge of refusing to take a PBT, and also relevant to the police officer's DUI investigation. At trial, over Hardesty's objection, Trooper James Parr testified that when pulled over for DUI, Hardesty refused to take the PBT.

In closing argument, the prosecutor urged the jury to consider Hardesty's refusal to take the PBT as evidence that he was DUI. The jury convicted Hardesty of DUI, identity theft, obstructing official duty, transporting an open container, and driving after being declared a habitual violator. The district court then found Hardesty guilty of refusing to take a PBT and making an improper turn.

The district court sentenced Hardesty to the aggravated 15-month prison sentence for identity theft, to run consecutively to his 12-month county jail sentence for DUI. The court also ordered that these sentences run concurrently with his 12-month sentence for obstructing official duty, 6-month sentence for transporting an open container, and 12-month sentence for driving while a habitual violator. Further, Hardesty was ordered to pay fines of $2,500 for DUI, $90 for refusing to take the PBT, and $60 for making an improper turn. Hardesty appeals his convictions for identity theft and DUI, as well as his sentence.

## I. Was The Evidence Sufficient to Sustain Hardesty's Conviction for Identity Theft?

Hardesty first challenges the sufficiency of the evidence of identity theft, pointing out that K.S.A. 21-4018 applies when the defendant possesses another *person's* identification documents. Hardesty reasons that his deceased brother, whose identification Hardesty possessed and attempted to pass off to the officer as his own, was not a "person" to whom the statute applied.

When the sufficiency of the evidence is challenged in a criminal case, we review all of the evidence in the light most favorable to

the prosecution and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007); *State v. Garcia*, 285 Kan. 1, 23, 169 P.3d 1069 (2007).

In relevant part, K.S.A. 21-4018 defines identity theft as "[K]nowingly and with intent to defraud for any benefit, obtaining . . . one or more identification documents . . . of another person other than that issued lawfully for the use of the possessor." The statute does not define the term "person."

Hardesty contests only the definition of "person," and therefore concedes the evidence was sufficient to prove he knowingly and with intent to defraud for his own benefit possessed his deceased brother's identification. Therefore, the veracity of the jury's verdict turns on whether a deceased person can be considered a "person" whose identity has been stolen for purposes of a conviction under K.S.A. 21-4018(a).

Interpretation of a statute is a question of law over which we exercise unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Our first task is to ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning. *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

In support of his interpretation of K.S.A. 21-4018, Hardesty cites *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 868, 24 P.3d 155, *rev. denied* 271 Kan. 1035 (2001). There, the defendant used the identification of a fictitious person to obtain employment and was convicted of identity theft. A panel of this court found K.S.A. 2000 Supp. 21-4018 inapplicable because the State failed to prove that the false identification used by the defendant belonged to a real person. 28 Kan. App. 2d at 869-70.

Hardesty also relies on *State v. Meza*, 38 Kan. App. 2d 245, 165 P.3d 298, *rev. denied* 285 Kan. 1176 (2007), where the defendant was convicted of identity theft for using identification and social security cards in the name of another person to obtain employ-

ment. The *Meza* panel distinguished *Vargas*, pointing out that while Vargas stole the identity of a fictitious person, Meza stole the identity of a "real person." 38 Kan. App. 2d at 248.

Hardesty contends *Vargas* and *Meza* require that when identity theft is charged, the State must prove that the defendant stole the identity of a "real person," which Hardesty interprets to mean "living" person. Because he used the identity of his brother, who was deceased, Hardesty argues the State failed to prove identity theft.

We do not find either *Vargas* or *Meza* controlling here. The term "real," as used in those cases, clearly was intended only as a contrast to the term "fictitious" and was not intended to distinguish between living or deceased persons.

Although the issue in *State v. Oswald*, 36 Kan. App. 2d 144, 145-46, 137 P.3d 1066, *rev. denied* 282 Kan. 795 (2006), did not involve whether the victim was a fictitious or "real" person, we find guidance in the panel's analysis of that identity theft case. In *Oswald*, the defendant used the victim's social security number and credit card information to obtain a new cell phone account. At the time of the offense, the statute required the State to prove the defendant acted with "intent to defraud for economic benefit." K.S.A. 2000 Supp. 21-4018(a). Oswald argued that because the victim voluntarily provided Oswald with her identifying information, Oswald could not have intended to defraud the victim.

The *Oswald* panel ruled that the defendant clearly had an intent to defraud because the defendant used the information for a purpose not intended by the victim—a purpose which had economic benefit to the defendant. Further, the court pointed out that the statute did not require proof of economic loss *to the victim*, but rather required only proof of the defendant's intent to defraud for his/her own economic benefit. 36 Kan. App. 2d at 148.

Moreover, as the court in *Oswald* noted, the identity theft statute was subsequently amended to delete the word "economic" and substitute the word "any." L. 2005, ch. 131, sec. 2. Thus, the version of the statute in place at the time of Hardesty's offense required the State to prove that Hardesty knowingly and with intent to defraud for *any* benefit, obtained, possessed, transferred, or used the identity of "another person."

*Oswald* is persuasive in that it found that K.S.A. 21-4018 does not require loss to the victim from the use of his/her stolen identity. Thus, while the "victim" in this case was deceased and sustained no actual "loss," we are not precluded from finding the defendant intended to defraud for the purpose of his own benefit.

We also derive guidance from federal cases considering the same issue as it relates to the federal aggravated identity theft statute, 18 U.S.C.A. § 1028A(a)(1) (2009). For instance, in *United States v. Kowal*, 527 F.3d 741, 745-46 (8th Cir. 2008), the Eighth Circuit Court of Appeals concluded that although the federal statute did not explicitly apply to deceased persons, the statute must be broadly interpreted to cover such cases. In support of its rationale, the court pointed out that the theft of a deceased person's identity is even more difficult to discover than other instances of identity theft. 527 F.3d at 745-47. See also See *United States v. Jimenez*, 507 F.3d 13, 19-20 (1st Cir. 2007) (aggravated identity theft under 18 U.S.C. § 1028A includes theft of a deceased person's identity).

Further, we note that some state identity theft statutes specifically apply to the theft of the identity of a deceased person. See, *e.g.*, N.C. Gen. Stat. 14-113.20 (2005); Ohio Rev. Code Ann. 2913.49 (Anderson 2005); Okla. Stat. tit. 21, 1533.1 (2007); Utah Code Ann. § 76-6-1102(2) (2009); Va. Code Ann. § 18.2-186.3(B1) (Michie 2009); Wash. Rev. Code 9.35.020 (2008).

Here, Hardesty essentially argues that because K.S.A. 21-4018(a) does not specifically include the theft of a "deceased" person's identity, the statute does not apply to that factual circumstance. Hardesty would have us interpret the term "another person" to mean "another living person."

We decline to do so. Rather, we conclude the legislature intended to include the theft of the identity of a deceased person within the scope of the statute, as long as the remaining requirements of the statute are satisfied.

It is undisputed that Hardesty used his deceased brother's identity to avoid officers knowing his real identity when he was stopped for DUI. Unquestionably, Hardesty intended to fraudulently procure a benefit from the use of his deceased brother's identity as

contemplated by K.S.A. 21-4018(d)(3), and we affirm his conviction for identity theft.

## II. Did the District Court Abuse its Discretion in Admitting Evidence That Hardesty Refused to Take a PBT?

Hardesty next argues that because the charge of refusing to take a PBT was decided by the district court, the court erred by denying his motion to suppress and allowing testimony regarding Hardesty's refusal to take the PBT.

Hardesty relies on *State v. Wahweotten*, 36 Kan. App. 2d 568, 572-78, 143 P.3d 58 (2006), *rev. denied* 283 Kan. 933 (2007), in support of his suggestion that a refusal to submit to a PBT is inadmissible to prove a DUI charge. In *Wahweotten*, the court noted that although K.S.A. 2005 Supp. 8-1012 permits the results of a PBT to be used to aid the court in determining a challenge to the validity of an arrest or a request to submit to the test, it does not discuss the admissibility of a PBT refusal. 36 Kan. App. 2d at 573. The panel thus held that while testimony regarding the defendant's refusal to submit to a PBT is admissible to prove the traffic infraction of refusal to submit to a PBT, it is not admissible to prove a charge of DUI. 36 Kan. App. 2d at 575-76.

The *Wahweotten* panel further concluded that the district court erred by not giving a limiting instruction directing the jury to consider evidence of the defendant's PBT refusal as it related to the traffic infraction of refusal to take a PBT, and to disregard the refusal as it related to the DUI charge. 36 Kan. App. 2d at 577. However, the *Wahweotten* court ultimately affirmed the district court because the defendant failed to object to the lack of a limiting instruction and the failure to give the instruction was not clearly erroneous in light of overwhelming evidence on the DUI charge. 36 Kan. App. 2d at 577.

Here, unlike *Wahweotten*, Hardesty filed a motion to suppress prior to trial regarding the PBT results and also objected during trial to Trooper Parr's testimony concerning the refusal. Therefore, we review the district court's denial of Hardesty's motion to suppress the evidence de novo, and we review the decision to admit Parr's testimony for an abuse of discretion. See *State v. Reid*, 286

Kan. 494, 504-05, 509, 512, 186 P.3d 713 (2008); *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). However, the district court may be affirmed despite error or abuse of discretion if such error or abuse of discretion did not affect the outcome of the trial. See *State v. Gonzalez*, 282 Kan. 73, 99-100, 145 P.3d 18 (2006).

Although Hardesty's refusal to take the PBT was admissible at trial to prove the charge of refusal to take a PBT, the district court, not the jury, was the factfinder for that particular charge. Thus, as in *Wahweotten*, the district court erred in denying Hardesty's motion to exclude evidence regarding his refusal to take the PBT as it related to his DUI charge. Further, by failing to give a limiting instruction, it abused its discretion when it admitted the same evidence during trial.

However, as in *Wahweotten*, the admission of the refusal to take the PBT did not affect the outcome of trial and does not require reversal because the remaining evidence of Hardesty's guilt as to the DUI charge was overwhelming. Officer Parr testified that Hardesty left a bar, crossed five lanes of traffic and made an improper turn, had an open container of beer and an open cooler with additional beers inside, smelled strongly of alcohol, had bloodshot eyes, slurred his speech, admitted to drinking, exhibited intoxication during multiple field sobriety tests, and said he could not pass a PBT.

Given the wealth of DUI evidence against Hardesty, we conclude there was no real possibility that the jury would have acquitted him of the DUI charge. Therefore, the district court error was harmless, and we affirm Hardesty's DUI conviction.

### III. Were Hardesty's Sixth and Fourteenth Amendment Rights Violated by the Imposition of An Aggravated Sentence?

Hardesty also challenges his sentence, contending the district court violated his Sixth and Fourteenth Amendment rights by sentencing him to the aggravated sentence within the presumptive sentencing range without requiring those aggravated factors to be charged in the complaint, put before a jury, and proved beyond a reasonable doubt. The State responds that the imposed sentence falls within the statutory maximum prescribed by the Kansas Sen-

tencing Guidelines Act (KSGA) and that therefore it is not subject to the requirements of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

· Interpretation of a sentencing statute is a question of law, and our standard of review is unlimited. *State v. Ruiz-Reyes*, 285 Kan. 650, 653, 175 P.3d 849 (2008). The constitutionality of a sentencing statute is a question of law over which this court has unlimited review. *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007).

Under *Apprendi*, any fact that increases the maximum penalty for a defendant must be put before a jury, and proved beyond a reasonable doubt. 530 U.S. at 490. In *Cunningham v. California*, 549 U.S. 270, 275-76, 307, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), the Supreme Court relied heavily on *Apprendi* in ruling that the statutory maximum sentence for a defendant was a middle term sentence of 12 years, and that imposition of an upper term 16-year sentence would require a jury finding of aggravated factors because imposition of the higher sentence based on the court's findings alone was unconstitutional.

Hardesty argues that the Kansas sentencing statutes are similar to those struck down as unconstitutional in *Cunningham*. However, our Supreme Court has determined that any sentence within the Kansas sentencing guidelines presumptive grid block does not violate *Cunningham* or *Apprendi*. *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008). The *Johnson* court pointed out that Kansas sentencing statute, K.S.A. 21-4704(e)(1), unlike the California statute ruled unconstitutional in *Cunningham*, gives a district court discretion to impose the aggravated sentence without requiring specific factual findings therefore. 286 Kan. at 849-51. Under *Johnson*, Hardesty received a presumptive guidelines sentence. We lack jurisdiction over, and therefore may not review, a sentence for a felony conviction within the presumptive guidelines sentence for the crime. K.S.A. 21-4721(c)(1); *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000). Thus, we must dismiss Hardesty's claim that the district court violated his Sixth and Fourteenth Amendment rights by imposing the aggravated sentence within the presumptive sentencing range.

IV. *Did the Imposition of an Increased Presumptive Sentence Based on Criminal History Violate Hardesty's Sixth and Fourteenth Amendment Rights?*

Finally, Hardesty agues that pursuant to *Apprendi,* the district court violated his Sixth and Fourteenth Amendment rights by using his prior criminal history to enhance his sentence without requiring proof of the convictions to a jury beyond a reasonable doubt.

Our Supreme Court decided this issue adversely to Hardesty's position in *State v. Ivory,* 273 Kan. 44, 45-46, 41 P.3d 781 (2002), where the court found *Apprendi* did not apply to a defendant's presumptive sentence based in part on his criminal history score under the KSGA. Because we have had no indication that our Supreme Court is departing from its position in *Ivory,* we are bound to follow it. See *State v. Merrills,* 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007).

Affirmed in part and dismissed in part.