NOT DESIGNATED FOR PUBLICATION

No. 127,798

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ANGEL DEOCA-ESQUIVEL,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Submitted without oral argument. Opinion filed June 26, 2026. Reversed and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Angel Deoca-Esquivel's vehicle was stopped by law enforcement because his license plate was not illuminated. The officer conducting the stop soon began to investigate the situation, suspecting that Deoca-Esquivel had been driving under the influence of alcohol. Deoca-Esquivel refused to submit to a preliminary breath test (PBT), and he was arrested. After his arrest, he admitted to drinking earlier that night and refused another breath test. A blood test more than three hours after the stop showed his

1

blood alcohol concentration to be slightly above the legal limit. The State charged him with driving while intoxicated.

During the State's closing argument at trial, the prosecutor referenced Deoca-Esquivel's refusal to submit to a PBT, asking the jury to recall a specific juror's remarks in voir dire that someone might refuse a breath test to avoid detection—an inference that is impermissible under Kansas law for a PBT. The prosecutor then doubled-down on this inference, asking the jurors to recall what their colleague had previously said and to use their common sense when evaluating the evidence. The jury found Deoca-Esquivel guilty as charged.

Deoca-Esquivel has now appealed his convictions, raising two evidentiary arguments for the first time on appeal and also claiming the prosecutor's argument about the PBT was erroneous and deprived him of a fair trial. After carefully reviewing the record and the parties' arguments, we conclude that the evidentiary questions are not properly before us, as a party must raise a contemporaneous objection to evidence at trial before they may challenge the admission of that evidence on appeal. But we agree with Deoca-Esquivel that the prosecutor's closing argument included legal errors that were compounded and repeated by other references to and reliance on the juror's answer during voir dire. The State has not proven beyond a reasonable doubt that these errors did not affect the outcome of the trial. We thus reverse Deoca-Esquivel's convictions and remand the case for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2022, Olathe Police Officer Joseph Jordan pulled over Deoca-Esquivel's minivan around midnight because the license plate light was not functioning. Once the van was stopped, Officer Jordan approached the van's passenger-side door. Deoca-Esquivel did not have a driver's license or insurance but gave the officer a state-issued

2

ID. Officer Jordan checked the ID against the State's records and found that Deoca-Esquivel's driving privileges had been revoked. While checking his ID, Officer Jordan told an officer colleague that Deoca-Esquivel appeared "super nervous" and his "eyes were a little glossy" but that his "speech was good."

Officer Jordan reapproached Deoca-Esquivel, this time from the driver's side door. The officer noticed that Deoca-Esquivel had "rapid, shallow breathing"; his eyes were bloodshot and watery; and he was chewing something that smelled like chocolate and peanuts. (Officer Jordan did not see Deoca-Esquivel chewing during the initial interaction.) He later testified that Deoca-Esquivel was "purposefully not swallowing" the food in his mouth, and based on his training and experience, he believed that Deoca-Esquivel might have been trying to mask an odor on his breath.

Deoca-Esquivel told Officer Jordan he had two beers after leaving work at 4:30 p.m., over seven hours before. Officer Jordan asked Deoca-Esquivel to engage in field-sobriety testing, which provided mixed results: Deoca-Esquivel failed the walk-and-turn test, showing three signs of impairment, but he did not show any indicators of impairment during the one-leg stand test. Officer Jordan then asked Deoca-Esquivel if he would provide a PBT, which he refused. Officer Jordan arrested Deoca-Esquivel for driving under the influence of alcohol.

After the arrest, Deoca-Esquivel refused another breath test (what courts generally describe as an evidentiary breath test). Officer Jordan then informed Deoca-Esquivel of his *Miranda* rights, and he agreed to speak with the officer. According to Officer Jordan, Deoca-Esquivel said "he had beers after work and then from there he proceeded to a nightclub [where] he ended up having two more additional beers." A firefighter from the Olathe Fire Department performed a blood draw at 3:15 a.m., about 3-1/2 hours after the initial stop. At that time, Deoca-Esquivel's blood alcohol level was 0.10.

The State charged Deoca-Esquivel with one count of driving under the influence (DUI), one count of driving with a revoked or suspended license, and one count of failing to display insurance. Deoca-Esquivel moved to suppress evidence from the stop, arguing that Officer Jordan exceeded the scope of the stop and violated Deoca-Esquivel's rights under the Fourth Amendment to the Constitution of the United States. The State argued that Jordan had reasonable suspicion to investigate for DUI. The district court denied the motion.

The case proceeded to a jury trial. During voir dire, the prosecutor discussed blood draws and breath tests to investigate blood alcohol levels and asked several potential jurors questions about what general inferences might arise if someone refuses a breath test. Potential Juror No. 21 responded that a person refusing a test might be "trying to avoid being detected." Juror No. 14 opined that a person might be "trying to possibly hide the fact that he's been drinking or lower that amount by delaying." Juror No. 22 agreed that a person who refuses a PBT is likely trying to "avoid detection."

Following the parties' peremptory strikes, Juror Nos. 21 and 22 were excused, but Juror No. 14—who we call Mr. Smith—was empaneled as part of the jury.

As the trial progressed, the State offered evidence of what had occurred during the traffic stop and the evidence obtained during the DUI investigation. Deoca-Esquivel did not object to this evidence. The State also offered evidence—through Officer Jordan's testimony—of Deoca-Esquivel's refusals of the PBT and evidentiary breath test. Deoca-Esquivel did not object to the admission of any of this evidence.

The prosecutor returned to the subject of Deoca-Esquivel's refusal to take the breath tests during the rebuttal portion of the State's closing argument, asking the jurors to recall Mr. Smith's statements during voir dire regarding his inference from such a refusal:

4

"[D]efense counsel fails to mention that the defendant not only refused to submit to a breath test once but twice. Two times. The defendant was asked to give a breath test two different times. Once at the scene and once at the station. Defendant refused both times.

"You'll see on the DC-27 and DC-70—that's the form Officer Jordan filled out, that he, in fact, refused at the station. They have to fill that form out at the station as well. But he did refuse to submit to that two times. Not just one time.

"I believe it was [Mr. Smith], I think—if I'm wrong—remembering correctly, when asked in voir dire, and you answered my question on whether—why you would think somebody who's been arrested for DUI would fail to submit to a breath test. I believe it was you and another juror not on the panel right now, and you said, to avoid detection or to avoid being caught. If I'm summarizing that correctly, I believe.

. . . .

"So I ask you, jurors, use your common sense on why the defendant not only refused to give a breath sample at the scene when defense counsel supposedly says his blood alcohol would have been the same as it was three hours later. And why he refused to give a blood sample at the station. Use your common sense, ladies and gentlem[e]n. Remember what [Mr. Smith] answered in voir dire with all of you guys present."

The jury found Deoca-Esquivel guilty of DUI, driving while a habitual violator, and failing to display insurance. The district court sentenced him to 12 months in jail for DUI, a consecutive 12-month jail term for driving while a habitual violator, and a concurrent 6-month term for failing to display insurance. Deoca-Esquivel appeals.

DISCUSSION

Deoca-Esquivel raises several issues on appeal. He challenges the admission of evidence surrounding the DUI investigation, claiming as he did in his suppression motion, that the officer lacked reasonable suspicion to extend the traffic stop into a DUI investigation. He also argues that Kansas caselaw prohibits the admission of his refusal to take the PBT, as the Kansas DUI statute states that no inferences may be drawn from that refusal. Third, he argues that the State committed reversible error during closing

argument by stating that the PBT refusal can be used as evidence of guilt of DUI. He asserts that these three errors, individually or in combination, deprived him of a fair trial.

After reviewing the appellate record and the parties' arguments, we conclude that the absence of a contemporaneous objection at trial precludes our review of Deoca-Esquivel's evidentiary challenges.

1. *Without a contemporaneous objection, Deoca-Esquivel's evidentiary claims cannot be considered on appellate review.*

As we have noted, Deoca-Esquivel raises two evidentiary challenges on appeal. He argues that the district court erred when it admitted evidence of the DUI investigation, asserting the State lacked reasonable suspicion to convert the initial traffic stop into a DUI investigation. And he asserts that evidence of the refusal of the PBT was also inadmissible. But Deoca-Esquivel did not object to the admission of either category of evidence at trial. Thus, they cannot be reviewed on appeal.

In Kansas, K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024). Even when a pretrial objection has been fully litigated through a pretrial motion, parties must make a contemporaneous objection on the record to preserve those arguments for appeal under K.S.A. 60-404. See *State v. Jordan*, 317 Kan. 628, 647, 537 P.3d 443 (2023) ("[P]retrial litigation of the evidentiary issue alone fails to satisfy this legislative mandate."). Although there are exceptions that allow some unpreserved issues to be raised for the first time on appeal, the language of K.S.A. 60-404 "'does not allow those exceptions to come into play in the context of the admissibility of evidence.'" *State v. Scheetz*, 318 Kan. 48, 59, 541 P.3d 79 (2024) (quoting *State v. Carter*, 312 Kan. 526, 535, 477 P.3d 1004 [2020]). The timely and specific objection requirement "is not optional." *Scheetz*, 318 Kan. at 59.

In his appeal, Deoca-Esquivel acknowledges that although he moved to suppress the evidence from the officer's DUI investigation before trial, he did not renew that objection at any time during the trial itself. Yet he argues that this court should still review the issue because it was fully litigated at the suppression hearing. But the thrust of K.S.A. 60-404's contemporaneous-objection rule is to allow the district court the opportunity to consider an objection *at trial*, in the context of all the evidence presented, to determine whether the evidence should be admitted. See *Jordan*, 317 Kan. at 647. And Deoca-Esquivel did not allow the district court such opportunity in this case.

Deoca-Esquivel also argues that the district court's admission of evidence relating to his PBT refusal warrants reversal. Deoca-Esquivel acknowledges that he did not object to the admission of this evidence at trial. Even so, he argues that this court's opinion in *State v. Wahweotten*, 36 Kan. App. 2d 568, 572, 143 P.3d 58 (2006), *rev. denied* 283 Kan. 933 (2007), allows prudential review of this evidence despite the language of K.S.A. 60-404. But three years after the *Wahweotten* decision, the Kansas Supreme Court decided *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009), where it rejected this reasoning and clarified that courts' prudential exceptions to our preservation requirements do not apply when an objection is required under K.S.A. 60-404:

> "We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404. [Citation omitted.]"

7

Application of this caselaw to Deoca-Esquivel's case is straightforward: Without a timely and specific objection to this evidence at trial, K.S.A. 60-404 forecloses review of Deoca-Esquivel's evidentiary challenges on appeal.

2. *The State committed reversible prosecutorial error when it argued that Deoca-Esquivel's PBT refusal was evidence of guilt of DUI.*

Deoca-Esquivel also argues that the prosecutor erred by arguing his PBT refusal implied his guilt to the DUI charge. Appellate courts use a two-step process to evaluate claims of prosecutorial error. *State v. Mendez*, 319 Kan. 718, 737, 559 P.3d 792 (2024). We first determine whether the prosecutor's argument goes beyond the latitude afforded attorneys during closing argument. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). If so, the burden shifts to the State to demonstrate that the error was harmless—that is, to convince the court beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. 305 Kan. at 109.

A prosecutor commits error by misstating the law. *State v. Z.M.*, 319 Kan. 297, 317, 555 P.3d 190 (2024). When a misstatement of controlling law is made deliberately, it is beyond the considerable latitude given to prosecutors during their arguments. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006). Thus, "[p]rosecutors must confine their comments to the evidence adduced at trial and reasonable inferences drawn from that evidence." *State v. Swint*, 302 Kan. 326, 339, 352 P.3d 1014 (2015) (citing *King*, 288 Kan. at 351).

K.S.A. 8-1012(b) directs that the results of a PBT "shall not be admissible in any civil or criminal action concerning the operation of or attempted operation of a vehicle except to aid the court or hearing officer in determining a challenge to the validity of the arrest." Courts have long interpreted this statute to render PBT refusals inadmissible as

8

evidence of DUI. See *State v. Hardesty*, 42 Kan. App. 2d 431, 437, 213 P.3d 745 (2009), *rev. denied* 290 Kan. 1098 (2010); *Wahweotten*, 36 Kan. App. 2d at 576.

The State asserts that the prosecutor could argue and draw inferences from the evidence admitted at trial. But the fact that the evidence is admitted without objection at trial does not mean that it may be used for a prohibited purpose during closing argument. In other words, prosecutors can draw inferences from evidence admitted at trial, but they cannot draw inferences that are contrary to the law. *State v. Z.M.*, 319 Kan. at 317.

Here, during closing argument, the prosecutor's statements explicitly and repeatedly referenced both refusals—the PBT refusal and the evidentiary test refusal. While the law permitted the prosecutor's comments about the evidentiary test refusal, the inclusion of the PBT refusal was error. The prosecutor's comments were made solely to draw inferences between the breath test refusals and Deoca-Esquivel's guilt. And under K.S.A. 8-1012(b), it was error for the prosecutor to use Deoca-Esquivel's PBT refusal as evidence of guilt of DUI at trial.

The prosecutor then compounded the error by tying the two breath tests together and referencing a specific juror's response during voir dire—a response that drew the precise inference of guilt prohibited by K.S.A. 8-1012(b):

> "I believe it was Mr. [Smith], I think—if I'm wrong—remembering correctly, when asked in voir dire, and you answered my question on whether—why you would think somebody who's been arrested for DUI would fail to submit to a breath test. I believe it was you and another juror not on the panel right now, and you said, to avoid detection or to avoid being caught. If I'm summarizing that correctly, I believe.
>
> . . . .
>
> "So I ask you, jurors, *use your common sense on why the defendant not only refused to give a breath sample at the scene* when defense counsel supposedly says his blood alcohol would have been the same as it was three hours later. And why he refused

9

to give a blood sample at the station. Use your common sense, ladies and gentlem[e]n. *Remember what Mr.* [*Smith*] *answered in voir dire with all of you guys present.*"
(Emphases added.)

In this way, the prosecutor's error went beyond a mere misstatement of law. The prosecutor drew inferences from Deoca-Esquivel's refusal of the PBT that were prohibited by law. And then the attorney asked the jury to consider an impermissible inference voiced by a *juror during voir dire*—a statement that *was not evidence*. This line of argument did not merely exceed the realm of permissible discussion during a closing argument; it ran past the line at full speed without slowing or considering the consequences. The prosecutor erred.

We thus must determine whether this error deprived Deoca-Esquivel of a fair trial—whether the State has proved "'beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record.'" *Sherman*, 305 Kan. at 109. In other words, "the party benefiting from the error must establish that there is no reasonable possibility that the error contributed to the jury's verdict." *State v. Brown*, 59 Kan. App. 2d 418, 447, 486 P.3d 624, *rev. denied* 313 Kan. 1043 (2021). Here, the State argues that there was no reasonable possibility that the prosecutor's error contributed to the verdict because of the strength of the evidence against the defendant.

We find that the State has not carried its burden to show that the prosecutor's error was harmless. When prosecutors make multiple inappropriate comments during closing argument that build upon one another, their prejudicial effect can be "magnified." 59 Kan. App. 2d. at 448 (citing *Zapata v. Vasquez*, 788 F.3d 1106, 1122 [9th Cir. 2015]). That was certainly the case here. The prosecutor drew a legally impermissible inference and then turned to impermissible, extra-evidentiary information (the jurors' opinions

expressed during voir dire) to bolster that inference. And the prosecutor then encouraged the jurors to "team up" or agree with their fellow juror to reach a particular outcome.

The egregiousness of this error is pitted against the evidence offered at trial—which, contrary to the State's arguments, is not especially strong. There was certainly evidence introduced to show impairment. But that evidence was not overwhelming. When Officer Jordan originally approached Deoca-Esquivel's vehicle, he did not detect the odor of alcohol or note anything amiss. Deoca-Esquivel's field sobriety tests rendered mixed results, with him passing the one-leg stand test without any indicators of impairment. The blood draw, which was conducted outside the three-hour statutory window for DUI in K.S.A. 8-1567(a)(2), revealed a blood alcohol level just over the legal limit. Given the mixed nature of the evidence, we are not convinced beyond a reasonable doubt that the prosecutor's comments regarding the refused PBT and the juror's comments did not ultimately sway the jury's verdict.

Under these circumstances, we find the State has not shown beyond a reasonable doubt that the prosecutor's comments during closing argument did not affect the outcome of Deoca-Esquivel's trial. We therefore reverse Deoca-Esquivel's convictions and remand the case for a new trial consistent with this opinion.

Reversed and remanded with directions.